420 P.2d 289

**John H. ALLISON, Jr., et al., Appellants,**

v.

**STATE of Arizona, Appellee.**

No. 7832.

Supreme Court of Arizona.

In Banc.

Nov. 17, 1966.

Jarrett S. Jarvis, Phoenix, for appellant Buckhorn Farms, Inc.

Standage & Allen, Mesa, for appellants.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Stanley Z. Goodfarb, Special Asst. Atty. Gen., and Kenneth G. Flickinger, Jr., Special Asst. Atty. Gen., Phoenix, for appellee.

STRUCKMEYER, Chief Justice.

Appellants in this joint action, by their first claim for relief, seek to quiet title to certain parcels of real property to which they assert ownership in fee simple. By their second and third claims for relief, they seek damages for the wrongful taking of a portion of their properties for use as a highway. On defendant's motion, the court below dismissed plaintiffs' complaint with prejudice. The only issue on this appeal is whether the motion to dismiss was properly granted. We have concluded that it was not.

It appears from the pleadings and answers to requests for admissions and interrogatories that, in the months of July and August of 1959, plaintiffs' predecessors in interest acquired, by patents from the United States Government, certain portions of the south one-half of the northeast one-quarter of Section 19, Township One North, Range Seven East of the Gila and Salt River Base Meridian; that the midsection line of Section 19 is the south boundary of plaintiffs' properties; and that for many years prior to 1959, a highway ran along the midsection line, being one of the principal national highways across Arizona, known as US 60–70. It is the right of way for this highway, where it passes over the plaintiffs' properties, which is the subject matter of this dispute.

Plaintiffs submitted to the defendant requests for admissions, one request being that defendant admit that the photocopies attached to the request were patents from the United States of America to plaintiffs' predecessors in interest. This request was answered with a denial for the

reason "we have never seen the original patents and consequently cannot compare the copies to the originals." Palpably, this was not a denial in good faith because the information was readily available in the United States Land Office in Phoenix. The trial court was justified in treating the answer to the request for an admission as being answered in the affirmative.

Plaintiffs' patents from the United States of America are on a printed form and contain certain printed exceptions to the grants. In addition, these typewritten words are to be found in the patents after the habendum clauses: "There is also reserved a right of way for a Federal Aid Highway under the Act of November 9, 1921 (42 Stat. 212)."

On the morning of the trial, before any evidence was introduced, defendant moved to dismiss plaintiffs' action. Obviously the motion to dismiss did not lie, since the complaint stated a claim for relief. While a motion to dismiss may be granted by Rule 12(b), Rules of Civil Procedure, 16 A.R.S., on the ground of failure to state a claim for relief, the court must, where matters outside the pleadings are presented and not excluded, treat the motion as one for summary judgment and give all parties a reasonable opportunity to present material pertinent to a motion for summary judgment pursuant to Rule 56, Rules of Civil Procedure. For the reason that there were issues of fact which could not be resolved on the record as it then existed, the court below erred and the judgment of dismissal must be set aside.

In this Court the parties have filed extended briefs. The case, however, is fundamentally simple. Since it may be resolved by the application of well understood and accepted principles of law, it is to these that we address our attention.

In any action to quiet title, a plaintiff must succeed on the strength of his own title rather than the weakness of his adversary's. Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751; Price v. Sunfield, 57 Ariz. 142, 112 P.2d 210; Hardinge v. Empire Zinc Co., 17 Ariz. 75, 148 P. 306. It is, of course, the universal rule requiring no citation of authority, that it is plaintiffs' burden to establish their titles.

Plaintiffs established, through the patents, grants to themselves from the United States of America in 1959. The same instruments also established reservations of a right of way for a federal aid highway. Plaintiffs cannot claim under the patents from the United States of America without confirming them, nor can they adopt those portions which operate in their favor and at the same time repudiate those which are counter or adverse to their interest. Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667; Gibson v. Lyon, 115 U.S. 439, 6 S.Ct. 129, 29 L.Ed. 440. So it has been held under the principle of estoppel by deed, that a grantee, or those claiming under him, cannot deny the binding authority of a reservation or exception in his deed. Russell v. Texas Co., 9 Cir., 238 F.2d 636, cert. denied 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537; Dillon Investment Co. v. Kinikin, 172 Kan. 523, 241 P.2d 493; Hagerty v. Lee, 54 N.J.L. 580, 25 A. 319, 20 L.R.A. 631; State v. Davis (Tex.Civ.App.), 368 S.W.2d 658.

Plaintiffs urge that it is incumbent upon them to establish only the grants of their fees and that it then becomes the burden of the defendant to establish a valid grant of a right of way. While this may be true where the fee is established without reservations in plaintiffs' muniments of title, the defendant's obligation to establish the matters set forth in its affirmative defenses does not arise until the plaintiffs have established perfect legal titles in themselves. If there is an exception or reservation appearing on the face of a chain of title, the party relying thereon must show that he is not within the exception or reservation. Maxwell Land-Grant Co. v. Dawson, 151 U.S. 586, 14 S.Ct. 458, 38 L.Ed. 279; Smith v. United States, 5 Cir., 153 F.2d 655; Davis v.

Commonwealth Land and Lumber Co., C.C., 141 F. 711; Hill v. Barner, 8 Cal. App. 58, 96 P. 111; Seddon v. Harrison (Tex.Civ.App.), 367 S.W.2d 888.

Thus in Maxwell Land-Grant Co. v. Dawson, 151 U.S. 586, 14 S.Ct. 458, supra, the rule is stated that:

> "There is a general rule, applicable to both conveyances and statutes, that where there is an exception in the general granting or enacting clause, the party relying upon such general clause * * * must also show by the testimony that he is not within the exception." 151 U.S. at p. 604, 14 S.Ct. at 464.

And in Hill v. Barner, supra, the court said:

> "The deed under which Haggin became the owner of the grant, reserved certain portions thereof from the sale to Haggin, and it was the duty of, and incumbent on plaintiff in order to trace his title to and identify it with the Haggin title, to show that the lots were not within the excepted portion." 8 Cal.App., at p. 64, 96 P. 111, at p. 114.

It is, therefore, the plaintiffs' burden to show that the claimed intrusion of the highway upon their property was not a right of way reserved for a federal aid highway. Unless plaintiffs can do so, they cannot prevail in an action to quiet title.

There was admitted by the State, on plaintiffs' request, a document marked "Exhibit L", which is an engineer's plat of the midline of Section 19. It shows a 50-foot strip north of the midline and a 100-foot strip to the north of, and adjacent to, the 50-foot strip. Contained on the exhibit is the following:

### "ARIZONA STATE HIGHWAY DEPARTMENT

"Sketch showing parcel of land in Maricopa County, Arizona, requested to be withdrawn from entry to be used as a 100′ additional right of way on the northerly side of present r/w Federal Aid Project No. 93–A(2)42 Mesa-Florence Jct. Hwy.

Date:-  May 22, 1942

[S]  R. HUTCHINS
_____
Arizona State Highway Eng'r.

### "CERTIFICATE OF REGISTER U. S. GENERAL LAND OFFICE

"I, hereby certify, that according to the records of this office, the parcel of land shown on this sketch (is—are) unappropriated and unreserved public lands.

Date:-  5–23–42

[S]  THOS. F. BRITT
_____
Register

### "U. S. DEPARTMENT OF INTERIOR

"Pursuant to the provisions of Section 17, of the Act of Congress, approved November 9, 1921, 42 Statute 212, this map is approved. Subject to all valid existing rights, but reserving rights of way for canals and ditches constructed by authority of the United States.

Date:-  Aug. 24, 1942

[S]  OSCAR L. CHAPMAN
_____
Assistant Secretary"

■ Exhibit L discloses that on May 22, 1942, the State of Arizona requested the United States to withdraw from entry, for use as a right of way, 100 feet to the North of a then-existing right of way of 50 feet, this 50 feet being a federal aid project, the Mesa-Florence Junction Highway. The United States Department of the Interior, on August 24, 1942, approved the map attached to the application. The application of the State of Arizona for a 100-foot right of way north of the then-existing right of way, having been approved, on its face establishes beyond controversy the existence of 100 feet as a right of way reserved from the plaintiffs' patents by the typewritten reservations. But, while a reservation for a 100-foot right of way has been established, the record is devoid of proof of the existence or nonexistence of a strip 50 feet wide, north

of the section midline in use as a federal aid highway.

As stated, it was the plaintiffs' burden to establish that the asserted 50-foot strip was not a right of way for a federal aid highway; but plaintiffs were not given the opportunity to establish the nature of this strip because of the procedural irregularity in granting the motion to dismiss prior to the introduction of any evidence at the trial. If we treat the defendant's motion as one for summary judgment, then it is afflicted with the vice that it did not comply with the directions of Rules 12(b) and 56. The court below should have directed plaintiffs to introduce such evidence as was material and relevant to a full determination of whether there was a federal aid highway over the south 50 feet of plaintiffs' properties.

There were, in effect, two issues. First, whether there was a federal aid highway, irrespective of its designated number; and second, if so, its location and actual width. We repeat that, for plaintiffs to prevail, they must show either there was no right of way for a federal aid highway across their properties, or, if there was, it did not fully occupy the asserted 50-foot strip immediately north of the midline of Section 19.

Plaintiffs contend that Exhibit L is a void instrument and, being void, no authority was conferred on the Secretary of Interior to reserve a right of way in their patents from the government in 1959. Their position is that the administrative agencies involved in the approval of the State's request for the additional 100 feet did not follow the applicable federal statutes because there was no evidence that a determination was made by the Secretary of Agriculture, or his successor, the Federal Works Administrator, that the use of the 100 additional feet was necessary for a federal aid highway. Accordingly, they argue, Exhibit L is subject to collateral attack.

Exhibit L is, of course, in effect, a patent from the United States Government. Although there are no provisions in the Act of Congress for the issuance of a patent for highways across unimproved and unreserved lands, the approval of a map is intended to be the equivalent thereof. Great Northern Ry. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed. 564.

In Van Dyke v. Arizona Eastern R.R. Co., 18 Ariz. 220, 230, 157 P. 1019, 1023, we said:

"The Secretary of Interior had jurisdiction and authority to dispose of the public domain, and his approval of plaintiff's map was equivalent to the issuance of a patent to the land, * * *."

By Section 8, Act of July 26, 1866 (14 Stat. 251), a right of way for construction of highways over public lands not reserved for public use was granted by Congress. By Section 17 of the Act of November 9, 1921 (42 Stat. 212), Congress provided that if the Secretary of Agriculture determines that any part of public lands is reasonably necessary for the right of way of any highway, he shall file with the secretary of the department supervising such land, a map showing the lands desired to be appropriated and if, within four months, the secretary supervising such lands shall not have certified to the Secretary of Agriculture that the appropriation of such lands are contrary to the public interest, they shall be transferred to the State Highway Department of the appropriate state. While the Act of November 9, 1921, was repealed on August 27, 1958, by 72 Stat. 885, Congress reenacted Section 17, cited supra, changing its number to 317 and making a few minor changes in the language.

The proper procedures are set forth in U.S.Code of Federal Regulations, 1st Ed., at pages 694 and 708:

"Section 244.52 Where a highway is to be constructed or improved under the provisions of the Act of Nov. 9, 1921 * * * the State highway departments may take advantage of the provisions of section 17 of said Act by filing application and maps with the register of the

land office for the district in which the lands affected are situated * * *.

"Section 244.53 Upon receipt of an application in the local land office * * * action will be taken in accordance with Section 244.8 * * * the register will forward the * * * map * * * to the General Land Office and will return the duplicate map * * * to the State highway department which will forward them to the Bureau of Public Roads for submission to the Secretary of Agriculture for his determination that the lands are necessary for the right of way * * *."

"Section 244.8 When an application is filed, the register will place on the papers * * * the serial number, the name of the office, and the date of filing. Notations will be made on the local office records * * * The register will certify on each map * * * that unpatented land is affected * * * and will return the map and duplicate to the applicant * * * Requests by the general land office for reports from all Bureaus or Departments shall be made in connection with all right of way applications * * * Upon approval of a map by the Secretary of the Interior, the duplicate copy will be sent to the register who will mark upon the township plats the line of the right of way * * * as shown upon the approved map."

▉ There is nothing on the face of Exhibit L to indicate a departure from these procedures. The presence of the signature of the Secretary of Agriculture on the map is neither contemplated nor required. He is merely required to make a determination of necessity.

"It may be laid down as a general rule that, in the absence of some specific provision to the contrary in respect to any particular grant of public land, its administration falls wholly and absolutely within the jurisdiction of the Commissioner of the General Land Office, under the supervision of the Secretary of Interior. It is not necessary that with each grant there shall go a direction that its administration shall be under the authority of the Land Department. It falls there unless there is an express direction to the contrary." Burke v. Southern P. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527.

Moreover,

"The rule [is] that *the patent is evidence that all previous steps had been regularly taken to justify making of the patent, * * *."* St. Louis Smelting and Refining Co. v. Kemp, 104 U.S. 636, 26 L.Ed. 875. (Emphasis supplied.)

We conclude that Exhibit L, being valid on its face, is evidence that all necessary steps for its issuance have been regularly taken.

▉ Plaintiffs urge that they may collaterally attack the State's Exhibit L at any time and place. The limitations on collateral attack on a government patent are set out in St. Louis Smelting and Refining Co. v. Kemp, 104 U.S. 636, supra:

"If a patent is absolutely void upon its face, or the issuing thereof was without authority, or was prohibited by statute, * * * it could be impeached collaterally * * * but in general other objections and defects * * * must be put in issue * * * in a direct proceeding to avoid the patent.

"The action of the Land Office in issuing a patent for any of the public land subject to sale * * * is conclusive * * * and no inquiry can be permitted [regarding] the circumstances under which it was obtained.

"A patent * * * is conclusive * * * when the action [of the Land Department] is within the scope of its authority; that is when it has jurisdiction under the law to convey the land." 104 U.S., at p. 646.

And see also Doolan v. Carr, 125 U.S. 618, 8 S.Ct. 1228, 31 L.Ed. 844. The instant case clearly does not come within the exceptions noted by the Supreme Court of the United States.

Plaintiffs also argue that they are not bound by the reservations of the rights of way for a federal aid highway in their patents by the United States Government to their predecessors in interest, for the reason that a reservation which is not required or authorized by statute is void. They cite a line of cases which hold that a reservation inserted in a patent by an administrative officer without statutory authority is void, and argue that for a like reason the reservations in their patents are void. These cases arose in connection with the sale of government lands. It was decided that the administrative officers could not place a reservation in the patent reserving mineral interests to the government, because the intent of Congress was to transfer the mineral as well as surface rights. It has similarly been held in other cases that reservations could not be made in patents where Congress did not intend that there be reservations.

The plaintiffs' patents do not come under this principle. Here, the Act of Congress has authorized the Secretary of the Interior to grant rights of way for high-ways, and the Secretary of the Interior, by its approval of the map, Exhibit L, in 1942, did grant such a right of way. Under these circumstances, clearly it would tend to thwart the will of Congress to grant rights of way for highways if the Secretary did not reserve in later patents the right of way previously granted. It was the obvious duty of the Secretary to reserve in subsequent patents previously granted rights of way.

Plaintiffs further argue that before the State of Arizona can accept a highway as a public highway, it must comply with the applicable Arizona statute. A.R.S. § 18–151. Before defendant can be required to produce evidence of its affirmative defenses, plaintiffs must establish their titles, for, as stated, plaintiffs must recover on the strength of their titles rather than a weakness in the State's.

The judgment of the court below is reversed for proceedings consistent with this decision.

BERNSTEIN, V. C. J., and UDALL, LOCKWOOD and McFARLAND, JJ.