**SECURITY FIRE DOOR COMPANY,
a corporation, Plaintiff-Appellant,**

v.

**COUNTY OF LOS ANGELES et al.,
Defendants-Appellees.**

No. 71-2654.

United States Court of Appeals,
Ninth Circuit.

Sept. 7, 1973.

---

Joseph Paul Bregman (argued), Gelfand, Malamed, Susman & Bregman, Beverly Hills, Cal., for plaintiff-appellant.

Mark G. Ancel (argued), Baker, Ancel & Redmond, Los Angeles, Cal., Edward F. Mannino (argued), Philadelphia, Pa., J. W. Malsbury, Deputy County Counsel, Los Angeles, Cal., Kenneth P. Kimmel, Beverly Hills, Cal., Philip Mirecki, Lawrence S. Ross, Beverly Hills, Cal., Baker, Ancel & Redmond, Los Angeles, Cal., for defendants-appellees.

Before MERRILL, HUFSTEDLER and CHOY, Circuit Judges.

MERRILL, Circuit Judge:

Security Fire Door Company ("Security") has brought this private antitrust action alleging a conspiracy among the defendants-appellees to prepare specifications for a county hospital construction project in such a manner as to exclude all competition upon the dumbwaiter system to be installed as a part of the project, with the result that defendant-appellee Guilbert, Inc., was the only supplier qualified to bid. Security asserts that this conduct violates § 1 of the Sherman Act, 15 U.S.C. § 1, and California's Cartwright Act, Cal.Bus. & Prof.Code § 16720. It seeks treble damages. Upon motion of defendants-appellees, the action was dismissed for lack of subject-matter jurisdiction, Fed. R.Civ.P. 12(b)(1), and failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). This appeal followed.

Defendants-appellees, other than the County and Guilbert, were architects and representatives of the County who prepared plans and specifications for the hospital project. The complaint alleges that defendants-appellees conspired to, and did in fact, prepare dumbwaiter specifications as follows:

> "General-Automatic Loading Specifications:
>
> The Dumbwaiter Contractor shall provide the dumbwaiter with a Guilbert Cargomaster System, or a system by Security, Peele or Lamson, of a design which has been in successful use for at least three years and arranged for automatic handling of cars, including the following materials and services: (Guilbert Cargomaster System No's and Specifications used to establish quality, operations, size and function)."

It is alleged that the specifications were "intentionally and deliberately drawn and interpreted by said defendants in such a manner so as: to exclude from public competition on said project all manufacturers and producers of dumbwaiters, save and except defendant, GUILBERT, INC.; to discriminate against all manufacturers and producers of dumbwaiter systems, save and except defendant, GUILBERT, INC.; to create a facade of free competition among manufacturers when, in fact, there was none. * * *"

The question presented is whether this complaint alleges a conspiracy in restraint of trade in violation of § 1 of the Sherman Act and the California Cartwright Act.[1] We hold that it does not and accordingly affirm.[2]

The alleged conspiracy here was between the supplier of a product and the purchaser (and its representatives). It is difficult to conceive how such a "conspiracy" can effect a restraint of trade in the antitrust sense.

■ ■ Once a purchaser's choice of product has been exercised competition is, of course, at an end. However, a purchaser is free to choose the product he desires without rendering himself an antitrust conspirator. The proscription against restraint of trade in this context seeks only to assure that the choice of product has been made freely under circumstances where the play of competition has been available rather than in response to anticompetitive factors such as coercion on the part of the supplier or agreements between suppliers not to compete with each other. If anticompetitive factors have foreclosed a free

---

1. The Cartwright Act was patterned after the Sherman Act. All parties agree that if a Sherman Act violation is alleged in this complaint, a Cartwright Act violation is also and that the reverse is true. *Accord*, Widdows v. Koch, 263 Cal.App.2d 288, 69 Cal. Rptr. 464 (4th Dist. 1968).

2. The District Court did not reach this question. It held that since the alleged restraint of trade was pursuant to governmental action, recovery was precluded by Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), where government action by a state was exempted from application of the Sherman Act. Appellees support the judgment of the District Court upon that ground and also upon the ground that Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), provide exemption from application of the antitrust laws in cases involving efforts to secure favorable policy decisions through influencing public officials. In response, appellants contend that these exemptions do not apply under the circumstances of this case, relying on George R. Whitten, Jr., Inc. v. Paddock Tool Builders, Inc., 424 F.2d 25 (1st Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 88 (1970), where it was held that the Parker v. Brown and *Noerr/Pennington* exemptions do not apply in cases involving commercial dealings with government; that those engaged in such dealings should be subject to the same antitrust limitations as apply in dealings with private consumers. The court there reversed summary judgment for defendants and remanded for a determination of whether an antitrust violation had occurred.

Since we hold that no antitrust violation is alleged, we need not reach the question of exemption. We assume, *arguendo*, that *Whitten* correctly holds that the exemptions do not apply in a case such as this.

choice by the purchaser, he is not thereby converted into a conspirator. He is, instead, a victim.

 Here the choice of product by the purchaser, Los Angeles County, was expressed in the specifications. There is nothing alleged in the complaint to suggest that this choice was made other than in an atmosphere of free competition among suppliers. So far as the complaint alleges, each supplier was perfectly free to tout the virtues of his particular dumbwaiter system in an effort to secure favorable specifications. It would appear that the architects simply favored the Guilbert system. In doing so they and their principals can hardly be charged with an antitrust conspiracy.[3]

Security's complaint appears to be that under California's competitive bid statute the choice should not have been made at that time, and it should not have been based upon the characteristics and features specified as desirable; rather the choice should have awaited the outcome of the bidding procedure, and it should have been based upon factors of cost.

The competitive bid statute may well serve to limit the freedom of public purchasers to make specific choices on the basis of preference rather than cost. However, a violation of the letter or spirit of a competitive bid statute, unaccompanied by anticompetitive factors bearing upon the exercise of choice of product, does not create an antitrust problem. Even a direct contract for the Guilbert system, without any pretense of putting the job out to bid (and thus a clear violation of the competitive bid statute), would not in itself have constituted a restraint of trade under the Sherman Act if the selection of Guilbert had been made in an atmosphere free from anticompetitive restraints.

Judgment affirmed.

---

3. *Whitten* (supra note 2) is quite a different case involving a different sort of conspiracy —one between the supplier and its dealers and representatives to eliminate competition and thus to achieve a favorable exercise of choice by the purchaser not based on the free play of competition. A violation of § 2 of the Sherman Act as well as § 1 was alleged. In remanding to the District Court to ascertain whether a violation of the Sherman Act had occurred, the court noted that "Paddock's conduct may on inspection prove to be the muscle flexing of a budding monopolist or it may prove to be no more than a vigorous selling effort. * * *" 424 F.2d at 34.